IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-2501-WYD-CBS

METABOLITE LABORATORIES, INC., a Colorado corporation,

Plaintiff,

v.

AMERISOURCEBERGEN CORP., a Delaware corporation, and
MCKESSON CORP., a Delaware corporation,

Defendants.

---

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STAY

---

Metabolite Laboratories, Inc. (Metabolite) sued these Defendants, and not their supplier Breckenridge Pharmaceutical, Inc. (Breckenridge), because Breckenridge appears judgment-proof.

Breckenridge has a "moderate to high risk of severe payment delinquency;" it appears to play a shell game in shifting assets among affiliates; it is the subject of a scathing media report about its business practices and ethics; and it was the subject of an administrative complaint by the Florida Department of Health for distributing diluted and adulterated drugs.

Defendants are the distributors who enable Breckenridge's nationwide infringement of Metabolite's patent. They present a firmer and far more stable target for Metabolite's patent infringement suit than Breckenridge. Denying or delaying relief against the Defendants by

requiring Metabolite to first prosecute and prevail over the course of two to three years in a trial, and appeal, against a judgment-proof and ever shifting Breckenridge is unfair and contrary to the law on the subject.

The Defendants' request for a stay is not about judicial efficiency or the "real party in interest."  It is about the orchestrated delays that Breckenridge and the Defendants have achieved, and continue to seek, through a series of legal maneuvering and outright defiance of the Rules.  All the while, of course, the term of Metabolite's patent continues to tick away.

The present motion would result in literally years of additional delay and thwart meaningful relief for Metabolite.  The motion should be denied on that basis alone.  But if it is granted, it should only be granted upon the condition that bond is posted for the anticipated judgment amount, as has been required by other courts in similar circumstances.  As an alternative, the two actions pending before this same court should be consolidated, mooting the arguments by all parties as to which action should proceed first.

## FACTS

### A.    WHO IS "BRECKENRIDGE?"

Defendants' representation that "Breckenridge Pharmaceutical, Inc. . . . filed a lawsuit against Metabolite . . . in . . . Florida"[1] is incorrect.  The declaratory judgment action filed against Metabolite in Florida referenced by the Defendants in their motion was not by

---

[1]  Defendants' Motion for Stay, filed July 11, 2005, pp. 1-2.

Breckenridge Pharmaceutical, Inc.  It was, instead, by an entity called "Florida Breckenridge, Inc."[2]

Although sharing the same address, registered agent and president, these are two different entities.  Breckenridge Pharmaceutical was incorporated January 6, 1999.[3]  Florida Breckenridge was incorporated August 6, 1992.[4]  While the Defendants contend (without supporting evidence) that Breckenridge Pharmaceutical, Inc. is the "real party in interest" in the present case, it was Florida Breckenridge, Inc. that was identified in the Florida action as the party that "markets and distributes a product which contains the same active ingredients as" the patented product.[5]

**B.    WHOEVER THEY ARE, "BRECKENRIDGE" HAS A VERY BAD REPUTATION**

According to a newspaper report,[6] Breckenridge, its president Laurence Runsdorf, and his son, who was an executive at Breckenridge, "were a conduit for counterfeit drugs reaching the drug supply" and have dealt in "drugs with false paperwork from unlicensed sellers."  Some

---

[2]  *See* Defendants' Motion for Stay, Exhibit A, Complaint, *Florida Breckenridge, Inc. v. Metabolite Laboratories, Inc.*, United States District Court for the Southern District of Florida, Case No. 04-81081, filed November 22, 2004.  Breckenridge Pharmaceutical once filed a declaratory judgment action against Metabolite in Florida, but that action was not on the '496 patent at issue in the present case.

[3]  *See* Exhibit A (Florida Department of State, Division of Corporations, Breckenridge Pharmaceutical, Inc., (July 30, 2005), *available at* http://www.sunbiz.org).

[4]  *See* Exhibit B (Florida Department of State, Division of Corporations, Florida Breckenridge, Inc., (July 30, 2005), *available at* http://www.sunbiz.org).

[5]  *See* Defendants' Motion for Stay Exhibit A, Complaint, para. 20.

[6]  *See* Exhibit C at page 5, (Bob LaMendola and Sally Kestin, *Former Convicts Try a Safer Venture: Pharmaceuticals,* Sun-Sentinel, Broward Metro Edition, May 26, 2003, at 1A).

of these were cancer drugs that were labeled as full strength but in fact were diluted to only 5% strength.  "Most likely, officials said, the drugs ultimately went to patients."[7]

The Florida Department of Health filed an Administrative Complaint against Florida Breckenridge, Inc. to fine it and Mr. Runsdorf $92,000.[8]  The Complaint alleged that they had:

- purchased prescription drugs from unlicensed sources;[9]

- distributed prescription drugs that were "adulterated" in that they may have been "contaminated with filth;"[10]

- sold prescription drugs in at least 31 transactions bearing false "pedigree papers;"[11] and

- "engaged in misrepresentation or fraud in the distribution of prescription drugs".[12]

## C.   BRECKENRIDGE HAS POOR PAYMENT PROSPECTS

Dunn & Bradstreet's "Comprehensive Report" on Breckenridge states that Breckenridge has a "moderate to high risk of severe payment delinquency over next 12 months."[13]

---

[7]  *Id*.

[8]  *See* Exhibit D (Department of Health, State of Florida, <u>Amended Administrative Complaint</u>, *Department of Health v. Florida Breckenridge, Inc., et al.*, filed November 18, 2002).

[9]  *Id*. at para. (4) - (5).

[10]  *Id*. at para. (7).

[11]  *Id*. at para. (8) – (14).

[12]  *Id*. at para. (16).

[13]  *See* Exhibit E (Dunn and Bradstreet Comprehensive Report Business Summary, *Breckenridge Pharmaceutical, Inc.*, No. 15-055-4335, as of July 29, 2005, <u>available at</u> https://lexisnexis.dnb.com).

### D.     "BRECKENRIDGE" AND THESE DEFENDANTS HAVE A HISTORY OF DELAY

The two Breckenridges, and the Defendants, have an extraordinary history of delay and obfuscation.  In their futile efforts to sue Metabolite in Florida, where no personal jurisdiction existed over Metabolite, Breckenridge:

- Requested seven extensions of time in order to respond to Metabolite's winning motion to dismiss.[14]

- Moved to stay one action against a co-defendant pending the outcome of its appeal of the court's order dismissing Metabolite for lack of personal jurisdiction.[15]

- Moved to stay a second suit pending the outcome of its appeal in a prior suit.[16]

- Moved to consolidate its second appeal into its first appeal, thereby requiring a re-briefing of the first appeal and a consequent delay.[17]

---

[14] *See* Exhibit F, PACER printout, *Breckenridge Pharmaceutical, Inc. v. Metabolite Laboratories, Inc. et al.*, United States District Court for the Southern District of Florida, Case No. 04-cv-80090, docket entry 21 filed April 19, 2004; 23 filed May 3, 2004; 35 filed June 14, 2004; 40 filed June 21, 2004; 53 filed June 29, 2004; 63 filed September 10, 2004; and 79 filed January 14, 2004.

[15] *See id.*, at docket entry 85 filed February 17, 2005; and Exhibit G, PACER printout, *Breckenridge Pharmaceutical, Inc. v. Metabolite Laboratories, Inc.*, United States Court of Appeals for the Federal Circuit, Appeal No. 05-1221, Motion for Stay Pending Appeal of Proceedings Before the District Court, docket entry 1, filed February 9, 2005.

[16] *See* Exhibit H, PACER printout, *Florida Breckenridge, Inc. v. Metabolite Laboratories, Inc.*, United States District Court for the Southern District of Florida, Case No. 04-81081, filed February 9, 2005, docket entry 14, filed February 9, 2005.

[17] *See* Exhibit G, PACER printout, *Breckenridge Pharmaceutical, Inc. v. Metabolite Laboratories, Inc.*, United States Court of Appeals for the Federal Circuit, Appeal No. 05-1221, Ordered: Appellants Motion to Consolidate this Appeal with 05-1428 Granted, docket entry 18, entered July 21, 2005; and Exhibit I, PACER printout, *Breckenridge Pharmaceutical, Inc. v. Metabolite Laboratories, Inc.*, Motion to Consolidate Newly Filed

[Footnote continued on next page]

The pattern of delay continues in the present case, where:

- Defendants responded to written discovery late, without seeking or obtaining leave from the Court or from opposing counsel.

- Defendants responded late to written discovery with ubiquitous boilerplate objections, and virtually no substance.

- Defendants produced documents months late, again without leave of the Court or opposing counsel.

- Defendants produced a deficient privilege log.

- Defendants failed to appear at a settlement conference.

- Defendants tried to avoid a hearing on discovery disputes by asserting that both their lead lawyer and local counsel had no knowledge of the dispute, which had been going on for months.

- Additionally, in the draft Scheduling Order for the case in whose favor the Defendants seek a stay, Breckenridge set forth a discovery cutoff that is a year away.[18]

- And, of course, Defendants now seek to stay the case entirely.

## ARGUMENT

Defendants acknowledge that the general rule is that the first filed case proceeds. They cite as an exception to the rule the circumstance where the first filed case is against a customer and the second filed case is against a "real party in interest" manufacturer.

---

[Footnote continued from previous page]
Appeal Pending Before the Court, United States Court of Appeals for the Federal Circuit, Appeal No. 05-1428, docket entry 2, entered June 24, 2005.

[18] *See* Exhibit J (Page four of Draft Scheduling Order, *Breckenridge Pharmaceutical v. Metabolite Laboratories, Inc*., United States District Court for the District of Colorado, Case No. 05-CV-1083).

The Defendants are misguided in their attempt to invoke the narrow customer suit exception for a stay in this case.[19]  Their attempt to invoke the exception is based upon a misstatement of the exception in their motion, where they refer to it as a "rule" that this Court would be "obliged" to follow.[20]  The Supreme Court has clearly held that this narrow exception is neither a "rule" nor an imperative command.[21]  The Defendants' "motion . . . fails to point out that the 'customer suit' exception is not an inflexible command that a second filed manufacturer's action be tried prior to a first filed action against a customer."[22]  Indeed, the application of this exception is within the discretion of the Court.  An "abuse of discretion resides in any stay of indefinite duration in the absence of a pressing need."[23]  "The party requesting a stay 'must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage for someone else.'"[24]

---

[19]  The Defendants' secondary argument invoking the general "First Filed Rule" is not pertinent. The Defendants failed to inform the Court that the alleged "First Filed Case Involving the '496 Patent" case that they want the Court to relate back to is a legal nullity since the Florida court lacked personal jurisdiction.  And it involved Florida Breckenridge, Inc., not Breckenridge Pharmaceutical, Inc., a completely separate legal entity.

[20]  Defendants' Motion for Stay, at p. 3.

[21]  *See Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952) (no "rigid mechanical solution").

[22]  *Dentsply Intn'l, Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 659 (D. Del. 1990).

[23]  *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1083 (Fed. Cir. 1989) quoting *Landis v. North American Co.*, 255 U.S. 248, 255 (1936).

[24]  *Id.*

## A.     METABOLITE'S RELIEF WILL BE JEOPARDIZED

Courts applying the customer suit exception have clearly mandated that it should not be used if it potentially jeopardizes the plaintiff's ultimate remedy.  It is a requirement that adequate protection is afforded to the patentee's rights before this exception may be used.  "Adequate protection includes assurance that the accused infringing manufacturer will be financially able to pay the damages that could have been collected from infringing customers."[25]  The potential that the manufacturer is not fully capable and answerable to the patent holder for all damages is a sufficient basis for denying a stay.[26]

Here, Metabolite's remedy against Breckenridge is illusory.  Dunn & Bradstreet, a reliable business information provider, reports that Breckenridge has a "moderate to high risk of severe payment delinquency."  The reputation of Breckenridge in the press, and with the Florida Department of Health, is, to put it mildly, poor.  And even in the unlikely event that Breckenridge currently has some assets to pay an eventual judgment, it is not certain whether "Breckenridge" (Breckenridge Pharmaceutical, Inc.) will have those assets available to satisfy a

---

[25]  Donald S. Chisum, Chisum on Patents § 21.02 [4] [c], (Matthew Bender & Co. 2004) (1978).

[26]  *See Codex Corp. v. Milgo Elec. Corp*., 553 F.2d 735, 738 n.6 (1st Cir. 1977) ("There may be situations, <u>due to the prospects of recovery of damages</u> or other reasons, in which the patentee has a special interest in proceeding against a customer") (emphasis added); *Mitsubishi Elec. Corp. v. IMS Tech., Inc*., No. 96-C-0499, 1996 U.S. Dist. LEXIS 12239, at *7-8 (N.D. Ill. August 21, 1996); *Wilbur v. Superior Concrete Accessories*, 217 F. Supp. 600, 601 (N.D. Cal. 1963) ("the court of appeals reversed the district court's order enjoining additional infringement suits against defendant's customers upon the ground that no findings of defendants' financial responsibility had been made, pointing out that the patentee's rights would be substantially impaired if the defendant would be financially unable to respond for the full damages awarded").

judgment, or if they will later belong to the "Breckenridge" that sued Metabolite in Florida, ("Florida Breckenridge, Inc."), or some other entity now in existence, or later formed, to evade judgment.

The unpublished case provided by the Defendants to support their motion makes this very same point, stating that "in order to guarantee that the alleged patentee will not be injured . . . the party . . . must furnish a bond for payment to the alleged patentee of any pecuniary award that may be made to the alleged patentee".[27]

The amount of the bond should bear a direct relation to the potential liability to which Breckenridge is exposed.  Metabolite's damages claim is for a 6% royalty (the industry standard for this patent), trebled to account for willfulness for a total of 18%.  Metabolite, therefore, asks that any stay in favor of Breckenridge's case be conditioned upon Breckenridge posting a bond in the amount of 18% of its sales to date (which it should certify to the court) and adding to that bond quarterly as the case proceeds forward.

---

[27] *Johnson Elec. North America, Inc. v. Mabuchi Motor America Corp.*, 85-CIV-7015, 1986 U.S. Dist. LEXIS 25967, at *5 (S.D.N.Y. May 2, 1986); *see also Bechik Products, Inc. v. Flexible Products, Inc.*, 225 F.2d 603, 607 (2nd Cir. 1955) (requiring a bond to be posted for all potential damages in a patent infringement action against the infringing manufacturer, and one of the manufacturer's customers, before an injunction could issue prohibiting the patent holder from pursuing further suits against the manufacturer's customers).

## B.   DEFENDANTS DID NOT ACT PROMPTLY

Prompt action is required to invoke the customer suit exception.[28]  If not, it is reasonable to conclude that the stay is made solely for further delay.

In this case, the gamesmanship is evident.  Breckenridge could easily have joined the present case, filed on December 3, 2004, but instead dallied until after the joinder deadline passed on May 31, 2005.  Then, instead of asking for a late joinder, Breckenridge filed a separate suit on June 14, 2005, in this exact same court without noting that it was related case.  Even after filing that separate suit, the Defendants and Breckenridge were, again, dilatory in pursuing relief as the Defendants waited until July 11, 2005, to file their motion to stay.  This is not prompt action by a manufacturer attempting to defend its customers, but that of an infringer attempting to delay action while it realizes a profit margin far in excess of the damages due Metabolite.  Breckenridge, with no sales force or research staff, apparently has a profit margin well over fifty percent.  Therefore, it is in their intrest to keep infringing even if they know that they will lose.  "[W]here a manufacturer could have raised the same issues and defended its customers in the first litigation but opted out, its entitlement to benefit from [the] exception is considerably lessened."[29]

---

[28]  *See Codex Corp.*, 553 F.2d at 738; *Dentsply Intn'l, Inc.*, 734 F. Supp. at 659; *Prevent Inc. v. WNCK, Inc.*, No. 93-5416, 1994 U.S. Dist. LEXIS 404, at *5 (E.D. Pa. January 20, 1994).

[29]  *Graco Children's Products, Inc. v. Kohus*, No. 98-434, 1998 U.S. Dist. LEXIS 4289, at *10 (E.D. Pa. April 3, 1998).  Before denying or delaying a patent holder's attempt to vindicate legal rights in this Court through a stay, reasonable alternatives should be considered.  The customer suit exception was formulated to resolve priority between competing actions in different forums.  "If all [ ] parties could be joined in a single lawsuit, then it might be

[Footnote continued on next page]

## CONCLUSION

Metabolite is entitled to a speedy – or at least something short of a glacial – resolution to this dispute.  The only meaningful resolution is against parties that have the financial means to satisfy a monetary judgment:  these Defendants.  For all practical purposes, they are the "real parties in interest," not the small, distant and shadowy company that seeks, once again, to extend its high profit margins while the term on Metabolite's patent continues to run.

Date:  August 1, 2005.

Respectfully submitted,


s/Glenn K. Beaton
Glenn K. Beaton
GIBSON, DUNN & CRUTCHER LLP
1801 California Street, Suite 4200
Denver, CO 80202-2642
Telephone: (303) 298-5700
Fax: (303) 296-5310
D.C. Box No. 18

Attorneys for Plaintiff

---

[Footnote continued from previous page]
  unnecessary to stay the proceeding against [ ] the customer[s]."  *Tri-Tronics Co., Inc. v. MacGregor & Co*., No. 90-C-0630, 1990 U.S. Dist. LEXIS 9141, at *10 (N.D. Ill. July 25, 1990).  Courts have found that the exception should yield to whichever forum, and/or action, can first bring all the necessary parties together.  *See Mattel, Inc. v. Louis Marx & Co*., 353 F.2d 421, 424 (2nd Cir. 1965); *Saes Getters S.p.A., v. Aeronex, Inc*., 219 F. Supp. 2d 1081, 1093 (S.D. Cal. 2002).  "The policy reasons behind the customer suit exception do not apply in this case because the manufacturer . . . is able to defend against the infringement claim in this action."  Here, the pending suit involving the manufacturer is not in some distant forum. It is in the exact same federal district court under a different file number.  Here, however, even a consolidation would effect a delay.

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I hereby certify that on August 1, 2005, I electronically filed the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STAY** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

     Hugh Gottschalk   gottschalk@wtklaw.com
     Julie Walker  walker@wtklaw.com

and I hereby certify that I have mailed the document to the following non CM/ECF participants:

     Robert E. Pershes
     L.A. Perkins
     BUCKINGHAM, DOOLITTLE & BURROUGHS LLP
     2500 North Military Trail, Suite 480
     Boca Raton, FL 33431

     _s/Glenn K. Beaton_____
     Glenn K. Beaton
     GIBSON, DUNN & CRUTCHER LLP
     1801 California Street, Suite 4200
     Denver, CO 80202-2642
     Telephone: (303) 298-5700
     Fax: (303) 296-5310

     Attorneys for Plaintiff

60126126_2.DOC